IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RAYMON K. NELSON,

   *Appellant,*

   v.

CLINTON JACKSON,

   *Appellee.*

Civil Action No.: ELH-15-03978

## MEMORANDUM OPINION

This matter is before the Court on an appeal filed by Raymon Nelson, debtor, pursuant to 28 U.S.C. § 158(a)(1).  ECF 1, Notice of Appeal.  Nelson challenges an order of the United States Bankruptcy Court for the District of Maryland, issued December 17, 2015 (ECF 2-28) (Lipp, J.), granting the motion for summary judgment filed by a creditor, Clinton Jackson, in an adversary proceeding, and denying the debtor's discharge under 11 U.S.C. § 727(a)(4) and § 727(a)(7).

Both Nelson, as appellant, and Jackson, as appellee, designated voluminous portions of the record of the Bankruptcy Court proceedings as the record on appeal.  *See* ECF 2; ECF 3. Nelson also filed "Appellant's Brief" (ECF 11), supported by a "Record Extract."  ECF 11-1. Jackson, who is self-represented, submitted a brief (ECF 22) as well as a lengthy Appendix. ECF 22-2.[1]  Jackson subsequently filed an amended table of contents and table of authorities as to his brief.  ECF 23-2.  Nelson has not replied and the time to do so has expired.  *See* Fed. R. Bank. P. 8018(a)(3).

---

[1] Jackson was also self-represented in the Bankruptcy Court.  *See, e.g.,* ECF 20 at 4.

No hearing is necessary to resolve the appeal.  *See* Local Rule 105.6.  For the reasons that follow, I shall vacate the Bankruptcy Court's Order of December 17, 2015, and remand the case to the Bankruptcy Court for further proceedings.

## I.      Factual and Procedural Background

Nelson, a cardiologist, had or has an ownership interest in three businesses: Raymon K. Nelson, Classic Cardiology, MD, PA, Inc. ("Classic Cardiology"); All About the Heart, LLC ("AAH"); and All About the Property, LLC ("AAP").  ECF 11 at 10, 12.  Between June 2005 and April 2010, Nelson employed Jackson as a consultant to perform various services, including securing corporate financing.  ECF 22 at 9-10 ¶ 3.  Nelson's wife, who is identified in the record alternatively as Cheryl K. Youngblood[2] and Whitney Nelson, served as a bookkeeper for some or all of the enterprises in which Nelson had or has an ownership interest.  *See* ECF 20 at 51.

Jackson ceased working for Nelson in April 2010.  ECF 22 at 9 ¶ 3.  He subsequently filed suit against Nelson and Classic Cardiology in a Maryland court (ECF 2-4 at 36), apparently for breach of contract.  ECF 22 at 9-10 ¶ 3.  On September 24, 2013, the Circuit Court for Anne Arundel County entered a judgment for Jackson in the amount of $135,363.72.  ECF 2-4 at 36. The circuit court had previously awarded Jackson attorney's fees in the amount of $64,147.  *Id.* According to Nelson, ECF 11 at 10: "The matter is currently on Appeal in the Special Court of Appeals [sic] of Maryland."

On November 7, 2013, Classic Cardiology filed a voluntary petition for bankruptcy relief pursuant to Chapter 11 of the United States Bankruptcy Code (the "Corporate Case").  *In re: Raymon K. Nelson, M.D., P.A. Classic Cardiology, Inc.*, WIL-13-28961 (Bank. D. Md.) (ECF 1).

_____

[2] Cheryl Youngblood is spelled alternatively in the record as "Charyl" (ECF 2-4 at 10 ¶ 25) and "Cheryl."  ECF 20 at 30.

A week later, on November 14, 2013, Nelson filed a voluntary petition for bankruptcy relief pursuant to Chapter 11 of the United States Bankruptcy Code (the "Individual Case"). *In re: Raymon Kevin Nelson*, WIL-13-29248 (Bank. D. Md.) (ECF 1). Both petitions were subsequently converted to petitions under Chapter 7. Corporate Case, ECF 180; Individual Case, ECF 149.

On May 5, 2015, Jackson initiated an adversary proceeding against Nelson, but only in the Individual Case. The Complaint, titled "Creditor Clinton A. Jackson's Complaint Objecting to Discharge of Debtor" (ECF 2-4 at 1-18), was supported by several exhibits. *Id.* at 19-42. The crux of the Complaint was that "[t]he Debtor knowingly and fraudulently made a false oath or account" (*id.* at 5 ¶ 12) and that "[t]he Debtor concealed property that belonged to the estate with the intent to hinder, delay or defraud the Creditors and/or The Chapter 7 Trustee . . . ." *Id.* at 5 ¶ 13. In particular, the Complaint alleged, *inter alia*, that, notwithstanding amendments to his submissions to the Bankruptcy Court, Nelson failed to disclose income obtained from Classic Cardiology and AAH. *See generally id.* at 5-11 ¶¶ 14-26. Further, the Complaint alleged that Nelson failed to disclose a judgment debt incurred by AAP. *See id.* at 14-15 ¶ 31. Therefore, Jackson sought the denial of Nelson's discharge pursuant to "11 U.S.C. Sections 727(a)(2) and/or (a)(3) and/or (a)(4) and/or (a)(5) and/or (a)(7) . . . ." *Id.* at 17.

In the adversary proceeding, Jackson filed "Plaintiff's Motion for Summary Judgment" (ECF 2-7 at 1-2), which Jackson later supported with "Plaintiff's Second Amended Memorandum in Support of Motion for Summary Judgment" (ECF 2-17, collectively the

"Motion" or "Summary Judgment Motion").[3]   In relevant portion, the Summary Judgment

Motion stated, ECF 2-17 at 27-28:

> There is no reasonable dispute as to any material facts in this case. The Debtor's Schedules, [Statement of Financial Affairs], false oaths and false testimony demonstrates his attempts to conceal property and hinder or delay the Trustee in his administration of the estate and/or the Creditors; the Debtor also failed to satisfactorily explain his unilateral removal of substantial assets from the Corporate Debtor's income tax returns, post-petition, and then provided false testimony in effort [sic] to support his unilateral decision to remove the assets, including $224,000 of accounts receivable; and the Debtor provided a host of falsities in effort [sic] to throw his accountant 2010-2014 [sic], Mr. McDuffie, under the bus, and toward the Plaintiff, in effort [sic] to erase a fully adjudicated State Court Judgment, by omitting disclosure [sic] of the fact that he and his non-filing spouse are the sole bookkeepers, check writers, printers of Quick Books and Smooth Solutions Software Accounts Receivable Records, etc. for both the Corporate Debtor and AAH, and exclusively control and account for in excess of $2.5 million annual cash flow. The Debtor's aforementioned acts were committed in connection with both the instant case and the Corporate Debtor's case (#13-28961). Therefore, the Debtor is not entitled to a discharge pursuant to Section 727(a)(2), (a)(3), (a)(4), (a)(5) and (a)(7) of the Bankruptcy Code and Plaintiff is entitled to summary judgment as a matter of law.

In addition, Jackson averred, *id.* at 8 ¶ 1(k): "The Defendant knowingly filed false

disclosure of his November 12, 2013 settlement of the suit, Estate of Ralph Nelson (Myra Street

Nelson) v. Raymon K. Nelson, which was a tort suit for the Defendant, as Trustee, 2004-2013,

breach of fiduciary duty, dissipation of the Trust's assets in excess of $2.5 million,

commingelment [sic], fraud, etc."

Jackson's Summary Judgment Motion was supported by exhibits, including, *inter alia*, an

affidavit from Jackson; Nelson and Classic Cardiology's submissions in the Corporate and

Individual Cases; financial records concerning Nelson and the entities in which he had or has an

---

[3] According to the Order of December 17, 2015 (ECF 2-28), Judge Lipp considered Jackson's "Second Amended Memorandum" in support of his Motion for Summary Judgment. *Id.* at 1.

ownership interest; and deposition testimony.  *See* ECF 2-16, "Plaintiff's List of Exhibits in Support of Motion for Summary Judgment" ("Plaintiff's List of Exhibits").[4]  As many of the exhibits referenced in "Plaintiff's List of Exhibits" (ECF 2-16) do not appear to be included in the record on appeal, the content and origin of Jackson's exhibits is not entirely clear.  As to the deposition testimony on which Jackson relied, it appears that the depositions were taken in the course of Maryland court proceedings against Nelson and examinations pursuant to Fed. R. Bank. P. 2004.  *See id.* at 1-3.

Notably, Jackson also submitted an expert opinion letter from Judith L. Clay, CPA.  As amended,[5] Clay's letter provided, in relevant part, ECF 2-26 at 6 (bold in original):

> In my professional opinion, based upon review and analysis of the foregoing documents and my professional experience, the Debtor's income from operation of business was **$706,642, $569,700 and $536,330**, respectively, for the years ended 12/31/11, 12/31/12 **and 12/31/13**, including income from operation of business was **$845,007, $691,206** and **$536,330** income from operation of Classic Cardiology and All About the Heart, respectively during 2011, 2012 and 2013. The Debtor, Classic Cardiology and/or AAH reported zero "income from employment" for the Debtor during 2011 and 2012; **Classic Cardiology did, however, report $299,912 of compensation of officers (the Debtor) on line 7 of its'** [sic] **IRS Form 1120S, 2013, but the Debtor inexplicably omitted this income from Line 7 of his 2013 IRS Form 1040.** Accordingly, the "Income from employment or operation of business," as reflected on Line 1 of the Debtor's Statement of Financial Affairs, as amended 6/16/14, is inaccurate. The financial statements, including the 2012 & 2013 Income Statements for AAH, which were

_____

[4]  Plaintiff's List of Exhibits (ECF 2-16) was filed on the same date as the Second Amended Memorandum. ECF 2-17. Jackson subsequently supplemented the exhibits.  *See* ECF 2-27 at 4-5, "Notice of Filing Supplements to Exhibits Filed in Support of Plaintiff's Motion for Summary Judgment."

[5]  By Order of November 3, 2015 (ECF 3-31 at 1-2), Judge Lipp granted "Plaintiff's Motion for Leave of Court to File Plaintiff's Expert's Second Amended Opinion Letter, Dated October 13, 2015, Out of Time."  ECF 2-24 at 1-3.  Appellant's brief (ECF 11 at 15) quotes, without clear citation to the record, from one of Clay's earlier opinion letters dated July 21, 2015 (ECF 3-8 at 7-8).  It is unclear why Nelson's brief quotes from a submission that was subsequently amended in the Bankruptcy Court.

used to prepare AAH's 2012 & 2013 income tax returns, were grossly inaccurate, and required adjustments of $57,913 and $279,703, respectively, to accurately reflect the results of operation for 2012 and 2013, which were understated by those amounts, and therefore render the Debtor & his wife's books, records and financial reporting therefrom totally unreliable.

Nelson filed an opposition to the Motion.  ECF 2-11 (the "Opposition").  He argued, in relevant part, *id.* at 2:

The Plaintiff seeks summary judgment in this action based upon conclusory factual allegations of fraud and deceit. Plaintiff alleges that the facts in this case establish that the Debtor "knowingly and fraudulently" made false oaths, concealed property with the intent to hinder or delay creditors and withheld information pertaining to his property and financial affairs. However, Plaintiff has failed to offer any record evidence of undisputed facts in this case demonstrating that the Debtor intended to make any false oaths, conceal property with the intent to hinder or delay his creditors or that the Debtor intentionally withheld information pertaining to his property or financial affairs. Plaintiff offers no statement as to any material facts not in dispute in support of his motion. Instead, Plaintiff refers to certain "irrefutable" material facts, consisting of conclusory allegations of fraudulent conduct on the part of the Debtor.  Plaintiff offers no conclusive record evidence as to the Debtor's intent or state of mind. Plaintiff offers an affidavit in support of his motion for summary judgment. However, the affidavit contains no specific factual allegations and fails to demonstrate his personal knowledge of the material facts alleged in the motion for summary judgment. Plaintiff has failed to establish a proper basis for summary judgment in this action.

The Opposition refers to Nelson's submissions to the Bankruptcy Court (*see id.* at 3-4 ¶¶ 2-14), including apparently "the schedules and statements [that] were amended by the Debtor . . . ."  *Id.* at 10.  It appears from the record, however, that the Opposition was unsupported by other evidence.  Notably, the Opposition avers, *id.* at 9: "[A] debtor coming forward to amend his or her schedules is evidence that an omission or misconduct was not fraudulent."  In this regard, Nelson argued, *id.* at 12: "Debtor has clarified his personal and business income, corrected his accounting and tax deficiencies and fully disclosed his wife's duties and employment income.  There was no intent to defraud creditors and Debtor's books

and financial records have been corrected."   As best I can determine, the assertion is not supported by Nelson's Affidavit.

Thereafter, Jackson filed his reply to the Motion ("Reply").   ECF 2-21.   The Reply largely reiterated arguments advanced in the Summary Judgment Motion.

On December 9, 2015, Judge Lipp held a lengthy evidentiary hearing as to the Summary Judgment Motion.   In addition, argument was presented focusing on alleged violations of 11 U.S.C. §§ 727(a)(4) and (a)(7).   *See* ECF 20, Transcript of Hearing on Dec. 9, 2015.   Jackson introduced evidence that demonstrated that, despite Nelson's amendments to his bankruptcy submissions, Nelson had failed to disclose income and / or transfers from Classic Cardiology. *See generally* ECF 20 at 1-142.   In particular, Jackson introduced bank statements from Classic Cardiology showing that Classic Cardiology had paid a variety of personal expenses for Nelson and his wife (*see, e.g., id.* at 29), including expenses related to a Corvette.[6]   *Id.* at 28; *see, e.g.,* ECF 22-2 at 180 (showing an $850 payment from Classic Cardiology to "Tony[']s Corvette Shop" on October 9, 2012).

Thereafter, Judge Lipp heard argument from Nelson's counsel.   As counsel's factual admissions are relevant, I quote at length from this portion of the hearing transcript, *id.* at 142-47:

> THE COURT: All right. So we are just dealing -- again, we are just dealing with 727(a)(4) and (a)(7).  Do you have a response? Show me where there are material facts in dispute.
>
> MR. WEBSTER: Your Honor, I think that the evidence that Mr. Jackson is -- well, the documents that Mr. Jackson has presented to this Court demonstrate that there are material facts in dispute.

---

[6] As Nelson's counsel noted at the hearing, some of these payments were made pre-petition.  *See* ECF 20 at 29-30.

THE COURT: Well no, I disagree with you. So I am going to listen to you and you are going to tell me how the income was properly disclosed. You are going to tell me how transfers were properly disclosed.

There are certain things that -- there is no question there are some facts in dispute. No question about that. But there are some, the schedules that were provided -- and this was helpful because these are copies of the amended schedules -- have holes in them.

MR. WEBSTER: Yes, Your Honor. I agree. The schedules have inaccuracies and –

THE COURT: Yes.

MR. WEBSTER: -- under representations --

THE COURT: Yes.

MR. WEBSTER: -- and errors.

THE COURT: Yes.

MR. WEBSTER: I don't think there has been any evidence that that was done fraudulently to take advantage of any creditors. I can point to Mr. McDuffy's transcript where he talks about these inaccuracies, Your Honor.

Mr. McDuffy's transcript is at --

THE COURT: You don't think that the fact that there were transfers by the corporate entity to the benefit [of] Mr. Nelson and his wife, that those transfers that had not been disclosed aren't of any significance?

MR. WEBSTER: I think they are of significance.

THE COURT: Okay.

MR. WEBSTER: And Dr. Nelson fully admitted and acknowledged that at his 341 meeting. He didn't --

THE COURT: You tell me where he admitted that all of the amounts and the degree to which he, these payments were made within a year --

MR. WEBSTER: Well, I don't think --

THE COURT: -- which would be considered either fraudulent conveyances or preferences to insiders.

MR. WEBSTER: I don't -- I don't think that there was a discussion about the specific amount at the 341. He acknowledged that the corporate --

THE COURT: And where did he provide that information in amended schedules where he's -- he did file amended schedules and didn't disclose --

MR. WEBSTER: He filed amended schedules.

THE COURT: -- preferences and fraudulent conveyances. You tell me, where?

MR. WEBSTER: The schedules are inaccurate.

THE COURT: Okay.

MR. WEBSTER: But I'm saying that Dr. Nelson fully acknowledged that, testified to that, admitted that --

THE COURT: He never corrected them.

MR. WEBSTER: No, the schedules are still inaccurate and misleading.

THE COURT: Okay.

MR. WEBSTER: But I don't think the creditors have been harmed by that, Your Honor.

THE COURT: Oh yeah? Why are creditors not harmed where a trustee doesn't have the information to pursue fraudulent conveyances and/or preferences?

MR. WEBSTER: Because Dr. Nelson retained an accountant to correct his tax returns and to clean up the bookkeeping in his bankruptcy. And --

THE COURT: And why did the schedules not ever get amended?

MR. WEBSTER: Because he was converted, the case was converted to Chapter 7 and Dr. Nelson --

THE COURT: Still preferences, still fraudulent conveyances.

MR. WEBSTER: I understand, Your Honor. Dr. Nelson has fully cooperated with the Chapter 7 trustees and disclosed information that has been requested at those 341 meetings to the Chapter 7 trustees. There has been no effort to cover up anything that was done by Dr. Nelson.

He had sloppy and inaccurate bookkeeping at the time he filed bankruptcy. And he's acknowledged that he paid personal expenses out of his corporate bank account. But he didn't take any salary out either.

That's certainly not good bookkeeping. That's certainly not in keeping with accepted accounting practices. But I don't think it was done for any fraudulent reason. It was done because he didn't have sufficient accounting procedures in place.

But once the bankruptcy was filed he did retain a CPA. He did retain an accountant to clean up these practices, Your Honor.

THE COURT: All right. So you want to point me to anything else?

MR. WEBSTER: Well, I was going to direct the Court to Mr. McDuffy's testimony. But if the Court doesn't think it's necessary. Regarding the inaccuracies in the schedules and the problems and the difficulties. If the Court doesn't think that's necessary. . . . Mr. McDuffy was the bookkeeper --

THE COURT: Yes. So where was that in the schedules? Where was that --

MR. WEBSTER: No, it wasn't in the schedules.

THE COURT: -- it was disclosed to creditors? When was it disclosed to creditors that they might have causes of action? Or that the trustee would have causes of action?

MR. WEBSTER: At the 341 meeting. At the 341 meeting Dr. Nelson fully admitted that his bookkeeping was not in accordance with accounting standards.

THE COURT: Okay. Anything else? I mean this is your time.

MR. WEBSTER: I think that the Court has seen, once we looked to the exhibits cited by Mr. Jackson here in court we found a lot of inaccuracies, a lot of questionable information. Mr. Jackson's opinion. I think they are disputed.

The opinion submitted by his expert witness gives an opinion that income has been understated. But that would have to be a dispute that would be

determined at a trial, Your Honor, where Dr. Nelson could put on evidence as to why he, how he calculated his income and how that was done.

And his doctor [sic], Mr. Jackson's accountant doesn't know that it was done out of fraud, to avoid creditors. He's simply saying that under accounting principles the bookkeeping is not reliable. He's saying that under accounting principles the income was understated.

He doesn't have conclusive proof, undisputed proof of fraud. The opinion itself doesn't go that far.

THE COURT: Okay. Anything else?

MR. WEBSTER: And, Your Honor, Dr. Nelson is here in court today if the Court has questions of Dr. Nelson to clarify any issues that the Court may have questions about regarding these various exhibits that have been relied upon.

THE COURT: No. Thanks.

At the conclusion of the hearing, Judge Lipp summarized the Bankruptcy Court's factual

findings.  In relevant part, Judge Lipp said, *id.* at 148-49:

[T]here were facts in dispute . . . . But there are certain facts that are not in dispute. And that is that the schedules are inaccurate. And there is no dispute, I have not had any contradictory evidence that the bank statements are inaccurate.

That the payments that were made to Mr. Nelson and his wife from the corporate entity, and in particular the payments that were made were not disclosed either as income in his schedules or, if Mr. Nelson felt it wasn't income that somehow he was going to treat it differently, it wasn't disclosed in the corporate case as transfers.

And they needed to be disclosed as transfers for the benefit of an insider within a year. Those disclosures were not made. They are significant disclosures that needed to be made because that's the basis upon which creditors and the trustee can know that there were fraudulent conveyances, preferential transfers and that there are causes of action that potentially could be made that were not disclosed and have never been disclosed.

And I understand if the books and records were in shambles in the beginning of the case. Yet today they are still not disclosed and this case is now in Chapter 7 where the trustee would in fact pursue those causes of action potentially.

Judge Lipp concluded, *id.* at 152-56:

Where the offending oath is contained in the schedules or required statements the Debtor has a continuing duty to assure the accuracy of such schedules and statements means [sic] that the proper method of correction is a formal amendment to the schedules. A continuing blind indifference to the truth has been held to be reckless and the equivalent of fraud, evidencing an intent to hinder delay of the fraud [sic].

In this case I find many inaccuracies that were not corrected. The ones that are most troubling to this Court, as I have already indicated, are the failure to . . . disclose income.

* * * *

He did indicate some income, but it wasn't accurate in terms of amounts. But it was multiplied by the fact and what concerns me is the fact that even in the corporate case it wasn't corrected to show transfers. If, if it was believed that it wasn't income, clearly the amount is wrong, but if it was believed that it wasn't income at a minimum it needed to be -- well, it needed to be disclosed in the corporate case any way.

* * * *

There are other omissions that I find, actually find significant as well. The fact that Cheryl Young (sic) was a bookkeeper is relevant because it was his wife. The fact that -- and again, as these get multiplied they are important -- the fact that he didn't disclose that he had control over assets of another entity or person . . . .

The fact that the estate of Ralph L. Nelson Trust was not listed as a credited [sic]. It would appear, based on what I have heard today, that it is possible that if that is a non-dischargeable obligation and they never got notice of the bankruptcy to be able to participate, to file a complaint, to determine dischargeability of debt, because if he was a fiduciary that may not have been dischargeable. I don't know and it doesn't matter.

It was a creditor that wasn't listed and they should have been listed. And as I said it may be a very significant creditor if in fact they had a claim for non-dischargeability and didn't have the opportunity to file that complaint because they were not notified of the bankruptcy.

- 12 -

Those are the ones that I find most troubling. There are other inaccuracies and they have been cited. The other ones would not of their own necessarily create it, but the fact that there are so many misstatements just add to it.

And therefore I am denying him a discharge. Under 727(a)(4) and (a)(7). I find this case very troubling. It's been -- I have presided over this case for years. I have heard lots of testimony. I expressed concern, I know in the past, about the fact the schedules weren't correct. Because we have gone through -- this isn't the first time. And they were never corrected.

I find that there is a pattern of omission and inaccuracy that shows a reckless disregard. And therefore I find that he is not entitled to a discharge in this case.

As noted, by Order of December 17, 2015 (ECF 2-28 at 1-2), Judge Lipp granted the Summary Judgment Motion and denied Nelson a discharge pursuant to 11 U.S.C. §§ 727(a)(4) and 727(a)(7). This appeal followed on December 29, 2015. ECF 1.[7]

## II.    Standard of Review

The standard of review of a bankruptcy appeal in district court is the same standard used when an appellate court reviews a district court proceeding. *See* 28 U.S.C. § 158(c)(2) (providing that a bankruptcy appeal "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts . . . ."); *see also In re Slaey*, No. 1:14CV1210, 2015 WL 5139317, at *3 (E.D. Va. Sept. 1, 2015) (citing 28 U.S.C. § 158(c)(2)); *Haynes v. Stephenson*, No. 3:14-CV-352-MGL, 2015 WL 687133, at *3 (D.S.C. Feb. 18, 2015) (same); *Alexander v. Barnwell Cnty. Hosp.*, No. CIV.A. 1:13-02164, 2014 WL 607499, at *3 (D.S.C. Feb. 18, 2014) (same).

_____

[7] The Notice of Appeal (ECF 1) was docketed in CM/ECF on December 29, 2015. It is dated December 24, 2015. *Id.* at 2. According to the Docket Sheet from the Adversary Proceeding (ECF 1-2), which is attached to the Notice of Appeal, Nelson filed his Notice of Appeal in the Bankruptcy Court on December 24, 2015. *Id.* at 3.

- 13 -

Accordingly, the district court reviews the bankruptcy court's findings of fact under the "clear error" standard. *In re Taneja,* 743 F.3d 423, 429 (4th Cir. 2014); *Mort Ranta v. Gorman*, 721 F.3d 241, 250 (4th Cir. 2013). A finding of fact is clearly erroneous when the record demonstrates convincingly to the reviewing court that "a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see United States v. Hall*, 664 F.3d 456, 462 (4th Cir. 2012). The bankruptcy court's conclusions of law are subject to de novo review. *In re Taneja*, 743 F.3d at 429; *In re Kirkland*, 600 F.3d 310, 314 (4th Cir. 2010); *In re Biondo*, 180 F.3d 126, 130 (4th Cir. 1999). "On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings." *Harman v. Levin*, 772 F.2d 1150, 1153 n.3 (4th Cir. 1985) (internal quotations omitted); *see also In re LightSquared, Inc.*, 534 B.R. 522, 525 (S.D.N.Y. 2015) (recognizing, *inter alia*, the district court's power to remand with instructions for further proceedings).

Pursuant to Fed. R. Bankr. P. 7056, Rule 56 of the Federal Rules of Civil Procedure applies to adversary proceedings.  Under Fed. R. Civ. P. 56(a), summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co. Ltd. v. Zenith, Radio Corp.*, 475 U.S. 574, 586 (1986).

The Supreme Court has clarified that not every factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012).

Of import here, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 514 U.S. 1042 (2004); *see also Celotex*, 477 U.S. at 322-24. Moreover, in resolving a summary judgment motion, a court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. Ltd.*, 475 U.S. at 587; *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The judge's "function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345,

352 (4th Cir. 2007). Moreover, in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-15 (4th Cir. 2002).

However, as indicated, conflicting evidence must give rise to a genuine dispute of material fact in order to defeat summary judgment. *Anderson*, 477 U.S. at 247-18. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). Conversely, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the [movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [movant]." *Id.*

### III.    Discussion

Appellant identifies two issues in his brief, ECF 11 at 7:[8]

---

[8] Nelson's "Statement of Issues to be Presented on Appeal" (ECF 2-1 at 1-2), which was submitted with the notice of appeal, identifies three issues, *id.*:

I.      Did the Court Err when it granted the Movant Clinton Jackson's Motion for Summary Judgment[?]

II.     Did the Court Err when it granted the Movant Clinton Jackson's Motion for Summary Judgment based upon evidence not in the record[?]

III.    Is the determination of Income as identified in the Statement of Financial Affairs a Genuine Issue of Material fact when the debtor is not an employee[?]

I. Did the Court Err when it granted the Movant Clinton Jackson's Motion for Summary Judgment[?]

II. Summary Judgment is not appropriate where the Substantive Law Requires an Analysis of "Intent."

I address each issue in turn.[9]

As to whether the Bankruptcy Court erred in granting summary judgment for Jackson, Nelson's argument is not a model of clarity and relies, in part, on cases from the Third Circuit and Maryland state court, without explaining the relevance of those authorities. *See id.* at 17-18. Nevertheless, the crux of Nelson's argument is that "[t]he expert opinion of Judith Clay proves that a genuine issue of material fact exists." *Id.* at 15.  In particular, Nelson avers, *id.* at 16: "Clay has not applied reliable methodologies to data of a type relied upon by experts in her

---

Nelson's brief (ECF 11 at 7) raises two issues that do not entirely correspond to the three issues presented in the "Statement of Issues to be Presented on Appeal" (ECF 2-1 at 1-2).  I shall consider only the issues addressed by Nelson in his brief (ECF 11 at 7).

[9] Appellee's brief identifies two additional "Issues Presented," which again do not entirely correspond to the issues raised by appellant.  ECF 22 at 5. Fed. R. Bank. P. 8003(a)(1) provides: "An appeal from a judgment, order, or decree of a bankruptcy court to a district court or BAP under 28 U.S.C. § 158(a)(1) or (a)(2) may be taken *only by filing a notice of appeal* with the bankruptcy clerk within the time allowed by Rule 8002."  (Emphasis added).  There is no indication from the record that Jackson has noted a cross-appeal pursuant to Fed. R. Bank. P. 8016.  Accordingly, appellee is not entitled to raise new issues on appeal.

In addition, Jackson asks this Court to determine, ECF 22 at 5: "Whether Plaintiff/Appellee is entitled to reimbursement of costs and/or damages arising from Defendant/Appellant's Appeal, pursuant to Fed. R. Bankr. P. 8021 and 8020."  Fed. R. Civ. P. 8020(a) provides: "If the district court or BAP determines that an appeal is frivolous, it may, *after a separately filed motion or notice from the court* and reasonable opportunity to respond, award just damages and single or double costs to the appellee."  (Emphasis added).  Although appellee references a motion filed in the adversary proceeding (*see* ECF 22 at 41-42), no motion pursuant to Fed. R. Civ. P. 8020 has been filed in the District Court.  In any event, the award of damages and costs to Jackson would be inappropriate as this appeal is not frivolous.

field."   In addition, Nelson submits that the Bankruptcy Court failed to determine "whether the expert opinion of Judith Clay is based on reliable data."   *Id.* at 19.   Nelson also complains: "The expert was not present for testimony nor was she made available for cross examination regarding the reliability of the data she used to formulate her opinion."   *Id.* at 12.   Nelson appears to maintain that, as an "entrepreneur," his income would not be reflected in tax records in the same way that it would be for a salaried employee.   *Id.* at 17.   In short, Nelson contends that "judging the credibility of Judith Clay" constitutes a "judgment within a jury's province."   *Id.* at 19.

Nevertheless, Nelson appears to concede that the Bankruptcy Court did not rely on Clay's expert letter.   *Id.* at 16 ("The Court, wisely, did not place any emphasis on this evidence.").   Yet, for reasons that are not entirely clear, Nelson maintains that Judge Lipp "expand[ed] upon a concept that was introduced by Judith Clay."   *Id.*   In particular, Nelson contends, *id.*: "The Court focused upon what it believed was omissions from income and the failure to identify these omissions as transfers and conveyances."

As a preliminary matter, it does not appear from the record that Judge Lipp relied on Clay's expert letter as to the income that Nelson purportedly received from Classic Cardiology. Judge Lipp did not opine as to whether the transfers that Nelson and his wife received from Classic Cardiology should necessarily have been reported as income.   Rather, Judge Lipp said, in relevant part, ECF 20 at 149: "[T]he payments that were made to Mr. Nelson and his wife from the corporate entity . . . were not disclosed either as income in his schedules or, if Mr. Nelson felt it wasn't income that somehow he was going to treat it differently, it wasn't disclosed in the corporate case as transfers."   In short, Judge Lipp based her ruling not on the character of the payments that Nelson and his wife received from Classic Cardiology, but on the fact that the

payments—whether income or some other transfer—were not reflected in Nelson's financial disclosures to the Bankruptcy Court.

Notably, Nelson did not contest that his disclosures, even as amended, were inaccurate. To the contrary, Nelson's attorney conceded that Nelson's disclosures to the Bankruptcy Court were inaccurate and had never been corrected.  *See* ECF 20 at 144.

Even assuming that Judge Lipp relied on Judith Clay, Jackson's expert, Nelson advanced no specific facts to the Bankruptcy Court that established a material dispute as to Clay's findings or a challenge to the methodology.  To be sure, at the hearing, Nelson's attorney asserted, ECF 20 at 146-47: "The opinion submitted by [Jackson's] expert witness gives an opinion that income has been understated.  But that would have to be a dispute that would be determined at a trial . . . where Dr. Nelson could put on evidence as to why he, how [sic] he calculated his income and how that was done."

As discussed, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat*, 346 F.3d at 522.  A party cannot merely rely on a bald assertion as to the existence of a dispute of material fact.  Thus, even assuming that Judge Lipp relied on Clay's expert letter, Nelson failed to set forth specific facts demonstrating a triable issue as to the opinions set forth by Jackson's expert.

Accordingly, the Bankruptcy Court did not err in concluding that there was no dispute of material fact as to Nelson's failure accurately to disclose financial information.  But, that determination is not the end of the inquiry.

As noted, Nelson also argues that the Bankruptcy Court erred in its finding as to intent, *i.e.*, in concluding that Nelson intentionally misrepresented his finances.  In particular, Nelson avers, ECF 11 at 21: "The Court, through its own acknowledgement, stated that Summary judgment is inappropriate due to the requirement of proving 'intent.'   Section 727(a)(4)(A) necessitates a showing that the false oath was made 'knowingly and fraudulently.'"

Section 727 of Title 11 of the United States Code provides, in relevant part:

(a) The court shall grant the debtor a discharge, unless—
* * * *
> (4) the debtor knowingly and fraudulently, in or in connection with the case—
>
>> (A) made a false oath or account;
>>
>> (B) presented or used a false claim;
>>
>> (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
>>
>> (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;
> * * * *
> (7) the debtor has committed any act specified in paragraph . . . (4) . . . of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider . . . .

In *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 249 (4th Cir. 1994), the Fourth Circuit explained:

> [Section] 727 of the Bankruptcy Code allows debtors to receive a general discharge of their obligations in keeping with the primary purpose of bankruptcy

law, to give honest debtors a fresh start "unhampered by the pressure and discouragement of preexisting debt." *Lines v. Frederick,* 400 U.S. 18, 19, 91 S.Ct. 113, 114, 27 L.Ed.2d 124 (1970). However, certain provisions of § 727 prohibit discharge for those who "play fast and loose with their assets or with the reality of their affairs." *In re Tully,* 818 F.2d 106, 110 (1st Cir.1987).

As to § 727(a)(4)(A), the Fourth Circuit has said, *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir. 1987) (emphasis added):

> In order to be denied a discharge under [§ 727(a)(4)(A)], the debtor must have made a statement under oath which he knew to be false, and he must have made the statement willfully, with intent to defraud. *See* 4 *Collier on Bankruptcy* ¶ 727.04[1], at 727–54 to –55 (L. King 15th ed. 1987). The false oath made by the debtor must have related to a material matter. *See id.* § 727.04[1], at 727–57. *Whether a debtor has made a false oath within the meaning of § 727(a)(4)(A) is a question of fact.* The bankruptcy court's findings of fact with respect to this matter may not be set aside unless they are clearly erroneous. *See* Bankr.R. 8013 ("Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.").

*See French*, 499 F.3d at 352 ("In order to be denied a discharge under this provision, 'the debtor must have made a statement under oath which he knew to be false, and he must have made the statement willfully, with the intent to defraud.'") (quoting *Williamson,* 828 F.2d at 251).  *See also In re Evans*, 538 B.R. 268, 286-87 (Bankr. W.D. Va. 2015) ("Within the Fourth Circuit, '[i]n order to be denied a discharge under this section, the debtor must [1] have made a statement under oath [2] which he knew to be false, and [3] he must have made the statement willfully, [4] with intent to defraud.... [And 5] [t]he false oath made by the debtor must have related to a material matter.'") (quoting *Williamson,* 828 F.2d at 251) (alterations in *In re Evans*); *In re Ferebee*, No. 09-75200-SCS, 2012 WL 506740, at *12 (Bankr. E.D. Va. Feb. 15, 2012) ("To deny a debtor her discharge under § 727(a)(4)(A), the objecting creditor must prove that '1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement

was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case.' *Faircloth v. Palmer (In re Palmer),* Adversary No. 06–76, 2007 WL 2253274, at *3 (Bankr. N.D. W.Va. Aug.1, 2007) (citing *Keeney v. Smith (In re Keeney),* 227 F.3d 679, 685 (6th Cir. 2000)).").

A party opposing a discharge "ha[s] to assume the burden of proving its objection to the discharge under Bankruptcy Rule 4005."[10] *Farouki*, 14 F.3d at 249. As the Fourth Circuit explained in *Farouki*, *id.*:

> Although the burden may shift to the debtor to provide satisfactory, explanatory evidence once the creditor has established a *prima facie* case, the ultimate burden rests with the creditor.[] *See In re Brooks,* 58 B.R. 462, 464 (Bankr. W.D. Pa. 1986). Under *Combs v. Richardson,* 838 F.2d 112, 116 (4th Cir. 1988), the standard of proof in a discharge action is the preponderance of the evidence.[]

At issue here is whether Nelson made his inaccurate representations to the Bankruptcy Court with the requisite fraudulent intent. *See* ECF 11 at 21. In *Williamson*, 828 F.2d at 252, the Fourth Circuit said:

> The problems inherent in ascertaining whether a debtor has acted with fraudulent intent are obvious. Ordinarily, the debtor will be the only person able to testify directly concerning his intent. "Because a debtor is unlikely to testify directly that his intent was fraudulent, the courts may deduce fraudulent intent from all the facts and circumstances of a case." *In re Devers,* 759 F.2d 751, 754 (9th Cir.1985); *see also Farmers Co-operative Association v. Strunk,* 671 F.2d 391, 395 (10th Cir.1982) ("Fraudulent intent . . . may be established by circumstantial evidence, or by inferences drawn from a course of conduct."). Because a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor, deference to the bankruptcy court's factual findings is particularly appropriate.

Relying on the opinion of United States District Judge Rebecca B. Smith in *Hatton v. Spencer,* 204 B.R. 477 (E.D. Va. 1997), bankruptcy courts in the Fourth Circuit have explained

---

[10] Fed. R. Bank. P. 4005 provides: "At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection."

that "[t]he requirement that false oaths have been made 'fraudulently' may be satisfied in one of two ways." *In re McChesney*, PM-10-10824, 2012 WL 1856554, at *2 (Bankr. D. Md. May 21, 2012) (quoting *Hatton*, 204 B.R. at 484).  In *Hatton*, 204 B.R. at 484, the court said:

> First, fraudulent intent may be established by circumstantial evidence, or by inference drawn from a course of conduct. *Williamson,* 828 F.2d at 252 (citing *Farmers Coop. Assoc. v. Strunk,* 671 F.2d 391, 395 (10th Cir. 1982)). Thus a "pattern of concealment and nondisclosure" would permit an inference of the requisite intent.  *Ingle,* 70 B.R. at 983.  Secondly, courts have determined that a "reckless indifference to the truth" constitutes the "functional equivalent of fraud." [*In re Johnson*, 139 B.R. 163, 166 (Bankr. E.D. Va. 1992)].

*See also In re Evans*, 538 B.R. at 288 ("For a court to determine that a debtor harbored an intent to hinder, delay, or defraud, it must have either direct evidence of such intent or be presented with 'specific facts and circumstances that, in the aggregate, demonstrate a pattern of reckless disregard for the truth sufficient to warrant an inference of fraudulent intent.'") (quoting *In re Isaacson*, 478 B.R. 763, 784 (Bankr. E.D. Va. 2012) (citing *Hatton*, 204 B.R. 477)).

I am unaware of any specific guidance from the Fourth Circuit as to whether "a reckless indifference to the truth constitutes the functional equivalent of fraud."  *Hatton*, 204 B.R. at 484 (quotation marks and citation omitted).  However, the United States Bankruptcy Appellate Panel of the Ninth Circuit has addressed precisely this question.  It said, in relevant part, *In re Khalil*, 379 B.R. 163, 173-75 (B.A.P. 9th Cir. 2007), *aff'd*, 578 F.3d 1167 (9th Cir. 2009) ("The BAP's published opinion is a correct statement of the applicable law, and we expressly approve of that opinion by our decision today."):

> [N]umerous courts including five other circuit courts have held a reckless indifference to the truth can support denial of discharge under § 727(a)(4)(A). *See, e.g.,* [*In re Tully*, 818 F.2d at 111] (debtor's omissions evidenced "reckless indifference to truth equivalent to fraud for purposes of § 727(a)(4)(A)"); *Salomon v. Kaiser (In re Kaiser),* 722 F.2d 1574, 1584 n. 4 (2d Cir. 1983) (citing authority that reckless indifference to truth is the equivalent of fraud, and that a

pattern of reckless and cavalier disregard for truth can be serious enough to supply the necessary fraudulent intent required by § 727(a)(4)(A)); *Beaubouef v. Beaubouef (In re Beaubouef),* 966 F.2d 174, 178 (5th Cir. 1992) (multiple falsehoods, combined with "failure to take advantage of the opportunity to clear up all inconsistencies and omissions when he filed his amended schedules," constituted "reckless indifference to the truth and, therefore, the requisite intent to deceive") (citation omitted); *Keeney v. Smith (In re Keeney),* 227 F.3d 679, 686 (6th Cir. 2000) ("A reckless disregard as to whether a representation is true will also satisfy the intent requirement") (citation omitted); *In re Chavin,* 150 F.3d 726, 728 (7th Cir. 1998) ("not caring whether some representation is true or false—the state of mind known as 'reckless disregard'—is, at least for purposes of the provisions of the Bankruptcy Code governing discharge, the equivalent of knowing that the representation is false and material") (citations omitted); *Martin Marietta Materials Southwest, Inc. v. Lee (In re Lee),* 309 B.R. 468 (Bankr. W.D. Tex. 2004) (following *Beaubouef*). *See generally* C.C. Marvel, Annotation, *False Oath or Account as Bar to Discharge in Bankruptcy Proceedings,* 59 A.L.R.2d 791, 1958 WL 11371 (1958, updated weekly per Westlaw) ("Annotation, *False Oath or Account*"); § 9.5 (reckless disregard).

These cases could be read as equating recklessness with a knowing and fraudulent intent, but that goes too far. The statute specifically requires that the debtor make a false oath or account "knowingly and fraudulently." § 727(a)(4)(A). As one court put it:

> [A] debtor does not necessarily act with fraudulent intent even if he knowingly makes a false oath, and § 727(a)(4)(A), by requiring both knowledge and the intent to defraud, implicitly acknowledges that fact. It would certainly be anomalous to hold that a finding of reckless disregard on the part of a debtor for the accuracy of her schedules obviates the need to establish fraudulent intent, even though the Code permits no such "short cut" with respect to a debtor who signs schedules containing information which she knows to be false.

*United States v. Sumpter (In re Sumpter),* 136 B.R. 690, 696 (Bankr. E.D. Mich. 1991), aff'd on other grounds, 170 B.R. 908 (E.D. Mich. 1994), aff'd in part, rev'd in part, 64 F.3d 663 (6th Cir. 1995) (table).

On the other hand, intent usually must be proven by circumstantial evidence or inferences drawn from the debtor's course of conduct. *See, e.g.,* [*In re Searles*, 317 B.R. 368, 377 (B.A.P. 9th Cir. 2004), *aff'd*, 212 F. App'x 589 (9th Cir. 2006)] (evidence supported "factual inference" that debtor "intended to list a sum below the trustee's radar screen"); [*In re Roberts*, 331 B.R. 876, 884 (B.A.P. 9th Cir. 2005), aff'd and remanded, 241 F. App'x 420 (9th Cir. 2007)] (fraudulent

intent "may be established by inferences drawn from [debtor's] course of conduct"); [*In re Wills*, 243 B.R. 58, 64 (B.A.P. 9th Cir. 1999)] (same). Recklessness can be part of that circumstantial evidence.

[*In re Coombs*, 193 B.R. 557, 563 (Bankr. S.D. Cal. 1996)] strikes the appropriate balance.  It is critical of too easy a reliance on recklessness, but as we noted in Wills it also stands for the general proposition that a court "*may* find the requisite intent where there has been a pattern of falsity or from a debtor's reckless indifference to or disregard of the truth." *Wills,* 243 B.R. at 64 (emphasis added) (citing *Coombs,* 193 B.R. at 564). The *Coombs* court said it well:

> Neither sloppiness nor an absence of effort by the debtor supports, *by itself,* an inference of fraud. Courts which hold otherwise are simply devising a court-made prophylactic rule that the debtor must make substantial effort to provide accurate and complete schedules. Had the Congress intended to make such a rule, it could have done so easily, as it did with § 727(a)(3) (failure to keep adequate books and records), and (a)(5) (failure to adequately explain the loss of assets), neither of which have an express element of fraudulent intent. [Citation omitted.] But the Congress did not do so, and it is not for the courts to create new bars to discharge under § 727(a), or to so distort a requisite element as to make it no element at all.

> The essential point is that there must be something about the adduced facts and circumstances which suggest that the debtor intended to defraud creditors or the estate. For instance, multiple omissions of material assets or information may well support an *inference of fraud* if the nature of the assets or transactions suggests that the debtor was aware of them at the time of preparing the schedules and that there was something about the assets or transactions which, because of their size or nature, a debtor might want to conceal.

*Coombs,* 193 B.R. at 565–66 (emphasis added).

As noted, Judge Lipp stated, ECF 20 at 152-53:

> Where the offending oath is contained in the schedules or required statements the Debtor has a continuing duty to assure the accuracy of such schedules and statements means [sic] that the proper method of correction is a formal amendment to the schedules. A continuing blind indifference to the truth has been held to be reckless and the equivalent of fraud, evidencing an intent to hinder delay of the fraud [sic].

Judge Lipp went on to conclude that "there is a pattern of omission and inaccuracy that shows a reckless disregard."  ECF 20 at 156.  In Judge Lipp's view, there was no dispute as to Nelson's failure to disclose the relevant financial information.  *See id.* at 149-50.  And, she inferred Nelson's fraudulent intent from the facts and circumstances of the case.  *See id.* at 153-55.  In particular, she based her conclusion, *inter alia*, on "the failure to . . . disclose income" (*id.* at 153); the failure to disclose "potentially fraudulent conveyances and/or preferences" in the Corporate Case (*id.*); the role of Nelson's wife as a bookkeeper (*id.* at 154); Nelson's failure to disclose a creditor (*id.* at 155); and the sheer number of uncorrected misstatements.  *See id.* ("the fact that there are so many misstatements just add to it").

The Fourth Circuit has cautioned that "in evaluating a claim under § 727(a)(4)(A) . . . the question of whether a debtor has made a false oath is generally a question of fact."  *French*, 499 F.3d at 352 (citing *Williamson*, 828 F.2d at 251).  The *French* Court said, 499 F.3d at 353-54: "We have recognized that, in evaluating a § 727(a)(4)(A) claim, 'a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor.'" (Quoting *Williamson,* 828 F.2d at 252).

Thus, it seems that bankruptcy courts typically hold a trial as to the factual question of fraudulent intent.  *See, e.g., Williamson*, 828 F.2d at 250 ("After the trial of the adversary proceeding brought by Fireman's Fund Insurance Company, the bankruptcy court ruled that Williamson was not entitled to a discharge of his debts."); *Farouki*, 14 F.3d at 246 ("the bankruptcy court held a trial on the creditors' motion objecting to the debtor's discharge . . ."). Indeed, I note that *all* of the cases on which Judge Lipp relied (*see* ECF 20 at 150-52) were cases in which the bankruptcy court held a trial.  *See Williamson*, 828 F.2d at 250; *Hatton*, 204 B.R. at

- 26 -

481 ("The court's Initial Pretrial Order, entered the following day, required, *inter alia,* that the parties must each file a list of proposed exhibits and witnesses at least ten days before trial. Because the Hattons failed to file anything, the court prohibited them from calling any witnesses during the July 11, 1996 adversary hearing."); *In re McChesney*, 2012 WL 1856554, at *1 ("[Debtor] is in poor health, as demonstrated by the seizure that he suffered in the course of the trial . . . ."); *In re Seung Chan Park*, 480 B.R. 627, 630 (Bankr. D. Md. 2012) ("the Court held a multi-day evidentiary trial on this case . . ."); *Ingle*, 70 B.R. at 980 ("The debtor has filed a motion to dismiss this adversary proceeding, the motion was denied prior to trial, and the trial was held . . . on February 24, 1987.").

*French*, 499 F.3d 345, provides guidance. There, the Fourth Circuit reversed the Bankruptcy Court's grant of summary judgment for a creditor and denial of discharge to a debtor pursuant, *inter alia*, to § 727(a)(4)(A). *Id.* at 348, 350-51. Notably, French, the debtor, supported his opposition to the summary judgment motion with his own affidavit. *Id.* at 349. The affidavit stated, in part, *id.*:

> [French] had always sought to be truthful in his testimony in the bankruptcy proceedings, and maintain[ed] that any inconsistencies in the evidence were the result of confusion, his failure to understand certain questions he had been asked (in part because of his limited education—high school only—and unfamiliarity with legal terminology), and his inability to recall the information requested.

In addition, French submitted two affidavits from expert witnesses. *Id.* at 349-50. As the Fourth Circuit explained, *id.*:

> French's first expert was Dr. Daniel J. Freedenburg, a psychiatrist who had examined French and whose affidavit specified that "Mr. French was suffering from a progressive disorder in the nature of a dementia which adversely impacts his cognitive functions and which is particularly intensified under stressful situations, such as testimony in a deposition or hearing."

* * * *

> French's second expert was Charles G. Fagan, a CPA, whose affidavit asserted
> that he had examined French's financial records and concluded that they were
> reasonably sufficient to determine French's financial condition for the years 1998
> and 1999. More specifically, Fagan stated, "While Mr. French is not able to
> document all transactions in detail, . . . it is my opinion that the records he
> provided are sufficient to determine his financial condition in general terms
> without necessarily tracking each transaction."

The Fourth Circuit concluded that "the bankruptcy court erred and that a genuine issue of

material fact exists on whether French made false statements in his bankruptcy proceedings with

an intent to defraud." *Id.* at 353.  It also determined that the bankruptcy court erred in making a

credibility determination in the context of a summary judgment motion.  It said, *id.* at 354: "In

awarding summary judgment to [the creditor], the bankruptcy court made credibility

determinations on both French's and Dr. Freedenburg's proffered testimony, and specifically

rejected their testimony as unreliable.  In the summary judgment context, a court is simply not

empowered to make such determinations."

To be sure, this is a much closer case than *French*.  As noted, French presented his own

affidavit averring to his lack of fraudulent intent and produced affidavits from two experts as to a

medical condition that may have impaired his ability to make accurate disclosures and as to the

general sufficiency of his disclosures.  Here, by contrast, the Court is left to scour the record to

determine where Nelson "set forth specific facts showing that there is a genuine issue for trial."

*Bouchat*, 346 F.3d at 522 (quotation marks omitted).  Yet, at the hearing, it is apparent that

Nelson's attorney "direct[ed] the Court" (ECF 20 at 145) to the testimony of Nelson's

accountant, which, according to Nelson's attorney, discussed "the problems and the difficulties"

(*id.* at 146) in preparing Nelson's disclosures.  In addition, Nelson's attorney proffered that

Nelson could "put on evidence as to why he, how [sic] he calculated his income and how that was done" (*id.* at 146-47), and Nelson was willing to testify "to clarify any issues that the Court may have questions about regarding these various exhibits that have been relied upon." *Id.* at 147. In short, at the hearing, Nelson maintained that at least two witnesses could testify as to his lack of fraudulent intent.

Here, a fact-finder might well conclude that Nelson had the required fraudulent intent to warrant denial of a discharge pursuant to § 727(a)(4). For example, assuming that Nelson's counsel was referring to a transcript of a deposition of Edward Frank McDuffie (ECF 3-27 at 4-53), it is unclear how McDuffie's testimony, given in July 2014, would explain why, nearly eighteen months later, Nelson's disclosures to the Bankruptcy Court had not been corrected. Moreover, it is unclear whether Nelson can testify persuasively that, notwithstanding his repeated failures to make accurate financial disclosures to the Bankruptcy Court, he did not intend to defraud his creditors. Indeed, the Bankruptcy Court might well deduce fraudulent intent from all the facts and circumstances of this case. *See Williamson*, 828 F.2d at 252. Yet, these are credibility determinations that, as the Fourth Circuit has emphasized, are inappropriate for resolution in the context of a summary judgment motion. *See French*, 499 F.3d 353-54.

## IV.    Conclusion

For the foregoing reasons, I shall vacate the Bankruptcy Court's Order of December 17, 2015, which granted Jackson's Summary Judgment Motion and denied Nelson a discharge pursuant to 11 U.S.C. §§ 727(a)(4) and 727(a)(7), and remand the case to the Bankruptcy Court for further proceedings.

A separate Order follows, consistent with this Memorandum Opinion.

Date: July 20, 2016                    _____/s/_____

                                       Ellen Lipton Hollander
                                       United States District Judge